Ladies and gentlemen, please rise. This court is now in session. Please be seated. Madam Clerk, please call the case. 3-16-0514. Denise Martinez, appellant. My name is Anne Regal and I represent Denise Martinez as the appellant in this matter. A little bit of background, I also represent Denise Martinez in her divorce and I was trial counsel in the lower court in this matter. This case, first I would like to reserve five minutes for rebuttal. This case involves an appeal from the 12th Judicial Circuit trial court's ruling in favor of defendants Cook County Sheriff and Cook County itself on their motion to dismiss. In their motion to dismiss, defendants essentially raised two main arguments requesting dismissal under section 2619A9 of the Illinois Code of Civil Procedure. The first argument raised by the county is that the county's termination of Mrs. Martinez' maintenance payment was not a knowing violation of the Illinois Income Withholding for Support Act and therefore the county should not be subject to penalty under the Illinois Withholding for Support Act, otherwise known as the Withholding Act. The second argument raised by the defendants is that the Illinois Tort Immunity Act defeats plaintiffs' ability to bring a claim against the county under the Withholding Act. Defendants essentially argue that each of the aforesaid defenses or matters constitute an affirmative matter pursuant to section 2619A9 which will rightfully defeat Mrs. Martinez' claim in the trial court, which rightfully defeated that as their argument. The standard of review in this matter is de novo. To address the unknowing violation argument initially, defendants argue that the county employee who failed to take the proper steps and actually read the order of support that was sent to the county and failed to read the withholding order and instead decided to rely on, I believe it was a handwritten letter from their own employee as well as a letter from his attorney in order to terminate all support payable to my client Mrs. Martinez was an inadvertent act and was an unknowing violation of the Withholding Act. In support of that argument, the county provided an affidavit of the payroll clerk for the county, Laura Murray, and they used facts in that affidavit in an attempt to rebut the statutory presumption which was created when the county failed on six separate occasions to withhold support pursuant to the support order. Now as the court is well aware, section 2619A9 allows the dismissal of a claim upon the assertion or presentment of an affirmative matter which defeats the plaintiff's claim. However, it is well settled in Illinois that an affirmative matter cannot be simply a negation of one of the essential elements of the plaintiff's claim and must be something that actually defeats the claim outright.  In her complaint in the trial court, Mrs. Martinez alleged that the actions of the county through its employee, the payroll clerk, in terminating her maintenance payment was a knowing violation of the Withholding Act because it was done on six separate occasions exceeding the presumption that arises after only two. In response, the county counters that what the withholding clerk did, the actions she took, was simply an unknowing violation. Clearly, raising an unknowing violation is simply a negation of the essential element of my client's claim and it does not rise to the level of an actual affirmative matter under 2619A9. In fact, this very issue has been addressed by the Illinois Appellate Court in the case Vaughn v. Blue Cross. The citation is 403 Ill App 3rd 830 from 2010. Vaughn was actually another Withholding Act case in which the court specifically stated that the defendants in that case could not use an assertion of an unknowing violation as an assertion within the purview of 2619. Pursuant to the ruling in Vaughn, defendants' motion to dismiss should have been denied in the trial court in this matter. Defendants further argue in their response brief that plaintiff cannot and has not established a knowing violation of the Withholding Act. However, that's a factual issue that should be left for the trial effect and should not be a subject of this 2619 motion to dismiss. Furthermore, whether the facts alleged by the payroll clerk, Ms. Murray, even negate the statutory presumption is also a factual issue which shouldn't have been decided pursuant to Section 2619. Now the next defense that the county raised alleging it was an affirmative matter is that the Tort Immunity Act should apply and should bar Ms. Martinez's claim. However, in order to determine if the prohibition against punitive damages from the Tort Immunity Act protects Cook County, the court must first determine if the Tort Immunity Act should even be applied in this case. The purpose of the provisions of the Tort Immunity Act are obviously to protect taxpayers from issues and matters arising from the operation of government. In a situation such as this, in which Cook County was not acting as a governmental body but was acting as the employer of an individual who owed court order support to his ex-spouse, the Tort Immunity Act should not be applied to protect the county from the provisions of the Withholding Act. In fact, there are no facts present in this situation which should cause the Tort Immunity Act to be applied or triggered. The task itself of implementing the support order in the payroll department at the county was a task that has to be completed by any employer of any individual in the state of Illinois pursuant to the Withholding Act. It's not particular to governmental units. It's simply a statutorily mandated action an employer must take, and therefore the Tort Immunity Act should not be applied. In addition, the actions taken by the payroll clerk were not official in any manner. We're not discretionary in nature. We're simply ministerial and even clerical, if you will. Therefore, the terms of the Tort Immunity Act should not apply to her actions to shield the county from the penalty provided in the Withholding Act. Defendants obviously rely heavily on the case of In Re, the Marriage of Murray, a second district case. The citation is 2014, ILAP 121253, and that case is from 2014. And the court in that case ruled in a case of first impression in the state that the Tort Immunity Act, in fact, did prohibit the Withholding Act penalties because of the prohibition against punitive damages. However, in a first district case only a year later in 2015, In Re, the Marriage of Solomon, the citation is 2015, ILAP 133048. Do you cite things in those cases? I did. I've heard a lot of this. Why are you giving us this cite? Just to make sure, because it's a slip of the pen. It makes it sound like CPAs, doesn't it? I mean, you cited it and you agreed. I did, yes. Thank you, Judge. It eats up your time. That's true. The court in Solomon, in the first district, specifically stated they were declining to follow the reasoning in Murray. They did not agree with either the application of the Tort Immunity Act to the facts of the case or did not agree with the fact that the $100-a-day penalty was punitive in nature. In fact, examining the penalty itself, the $100-a-day penalty, is a predetermined amount. It's not inherently uncertain or unpredictable as are punitive damages. In fact, the penalty is more in the nature of a liquidated damage than a punitive damage and as such should not be barred by the Tort Immunity Act. Now, defendants will argue, I'm certain, and did argue in their briefs, that the language in Solomon was dicta, but that does not alter the fact that the language and the reasoning and the theory behind it are very persuasive in this matter. This is an extremely important issue, and I think the fact that they took the time to mention and go into detail in Solomon on this exact issue shows that the law on this area is by no means settled in Illinois. And finally, although Murray states that even if the Tort Immunity Act bars the penalty in the Withholding Act, that governmental entities still must comply with the provisions of the Withholding Act, to me that's somewhat disingenuous because if there is nothing behind the statute, no penalty for not complying, it essentially negates the application of the Withholding Act to all municipal entities and local public. It becomes a nullity. Excuse me? It becomes a nullity. It does. Okay. It does. And obviously municipal and local public entities employ, I would assume millions of people in the state of Illinois, and by applying the Tort Immunity Act to wipe out the protections of the Withholding Act, you have basically segregated all those people, families, spouses, current spouses, children of employees of public entities, and saying that they cannot have the same protections under the Withholding Act that families of private employees get. In conclusion, the application of the Tort Immunity Act in this matter is inappropriate in the situation, as the situation at hand and the violation under the Withholding Act had nothing to do with the operation of any government or any public policy. The application of the Tort Immunity Act to defeat the protections for those people that it seeks to protect would also be a severe detriment to families in Illinois, essentially putting the needs and the protections of taxpayers over the needs and protections of families. For the foregoing reasons and for those reasons stated in our briefs, my client respectfully requests that the Court reverse the decision of the trial court granting defendants' motion to dismiss and remand this case to the Twelfth Judicial Circuit for further proceedings on the merits of Mrs. Martinez's complaint against Cook County. Thank you, Counsel. Thank you for your time. Counsel, you may proceed. Good morning, Your Honors. My name is Paul Fengman, and I represent Cook County and the Cook County Sheriff's Office. Your Honors, there are at least three reasons to affirm the circuit court order. The first is that the plaintiff did not plead an intentional failure to withhold. The plaintiff merely pled the statutory presumption. The second is that the county provided affirmative matter in the form of a sworn affidavit and documentary evidence to prove that this failure to withhold was a mistake. And the third is that the Tote Immunity Act and public policy prohibits this statutory penalty in this instance. With regard to whether the plaintiff pled intentional, I'd like to just focus specifically on the complaint. The complaint is fairly brief, and it states five facts that are not disputed. The first is that a judgment of dissolution of marriage was entered requiring support payments. The second is that Solomon Martinez, the former husband and father, was a Sheriff's Office employee. The third is that an amended support order was later entered terminating child support but continuing maintenance support. The fourth is that the county was provided a copy of that amended order. And the fifth is that the plaintiff did not receive a series of payments, I think seven payments actually. Those are facts pled in the plaintiff's complaint at the circuit court. Those facts are not in dispute, and in fact in a 2619 motion they can't be in dispute. The defendants, Cook County and the Sheriff's Office, don't dispute those facts in any of the pleadings. So what are you supposed to show in the 219 to defeat it? In a 2619 motion, you can provide affirmative matter, which can be in the form of affidavits or other proof. And the county did provide affidavits, which were unrebutted. It's clear that an unrebutted affidavit must be accepted by the trial court. So basically the trial court in this case had the uncontradicted facts in the complaint. Which just said, no, I didn't intend to do it. Right? I mean, what was the affidavit saying? The affidavit said, providing the documents, it basically showed the court that the support order, the uniform order of support was cloaked within a whole bunch of other documents when it was delivered to the employer, in this case the county. That it was basically hidden behind a whole bunch of other documents. In fact, it was after specific requests, too specific requests, to terminate all support, to terminate all withholding. So in this case, the affidavit, to answer your question, Your Honor, it was providing evidence and testimony to show, to explain the mistake, to show that the mistake was understandable and reasonable. Well, I mean, the essence is unintentional. Unintentional. That's what's under, that's what, to get recovery, you have to allege and prove that trial intentionality, correct? You're right, Your Honor. The whole fact is that intentional is really the issue. Knowing versus unknowing is kind of an awkward way of using the language. The statute and the legislature and the court in Thomas v. Diener focus on intentional. So the whole point is intentional. Did the employer, the county in this case, intentionally and knowingly fail to withhold the documents? And I think that plaintiff in this case didn't plead that. The plaintiff in her complaint didn't bring forth any evidence or any affirmation that there was an intent. The plaintiff, in response to the 2619 motion, didn't bring forth another affidavit, a counter affidavit. What you're saying the plaintiff is left with is a presumption, which is statutory presumption. Exactly, which can be clearly rebutted according to case law. And what? That 2619 statute. Yes, Your Honor. So this case... I was looking at whether it was sufficient in the 219 state whether your affidavits, your response, are sufficient. Exactly, Your Honor. And I know that maybe the thought is that that short circuit is the trial court in some way. But, in fact, it really does provide a... A short circuit. I mean, you don't get a ruling on 2619 except from the trial court. Yes. So there's no short circuit. What's short circuit is an evidentiary hearing of findings of fact and conclusions of law on the judgment. And, in this case, there was no issue of material fact. There's nothing in the affidavits and nothing in the complaint that is rebutted by any evidence, any testimony, any documentary evidence that the 2619 was properly granted because there was really no reason to have a trial. There was no evidence that was contradictory. And what's the standard of review? Good question. The standard of review, as I put in my response brief, is de novo. But there is another standard of review. If the trial court makes any findings of fact, then the standard of review changes. It's hard to tell, as we all know from looking at the circuit court's order, whether the circuit court made any findings of fact. I think the default in this case may be that there were no findings of fact because the circuit court's language was, I adopt the rationale, the reasons, and the argument of the county. They didn't mention the facts. I don't think that it was necessary to mention the facts in that ruling, as brief as it was, because no facts, as I mentioned, were contradicted or in dispute. So I would answer your question to say it is basically de novo at this point because there aren't really any... Unless there's conflicting inferences from the undisputed facts, then you move it in the right direction. Yes. And I guess you could say that there's some inference in the fact that the support order, the uniform support order, was transmitted to the county and the county provided the surrounding facts about how it was transmitted. It was transmitted in such a way to make it reasonable, the statement of Laura Murray, the wage garnishment clerk, that she made a mistake. So I don't think that that's an inference that goes against. I think it still gives color to the complaint, the plaintiff's complaint, but I think it adds weight to the sworn testimony of the wage garnishment clerk that she simply made a mistake, that she unintentionally and honestly made a mistake in stopping her review of the documents. The court adopted your tort immunity document.  In 2619, it's clear that that's an affirmative matter. With regard to tort immunity, I understand that there are hundreds of thousands of families in Illinois that work for the government, and nobody would want to see those families left without a tool to ensure that children and spouses get support. Section 35 still requires the government to withhold and turn over the money. Nobody is saying that Section 35 doesn't require the government to perform that act. What we are saying is that the Tort Immunity Act was a common law act, but was put into words to protect the taxpayer's money from being diverted from its original intent. And the tort immunity doesn't apply, the tort immunity applies here because it's specifically just the county and the effects of the mistake that were made. What I'd like to point out, actually, is that there are other ways to force a government to do something. You can file a mandamus action. You can file a contempt motion, a motion to compel, which was done in this case. Both of those actions include damages in a way. The court has the power of contempt to issue fines to compel action. It's just that you can't do it with Section 35 penalty. No. The tort immunity, as the Murray Court had held, there's strong public policy to avoid taxpayer funds and going towards disuse. The second aspect of that for the government is that the government doesn't have anything to gain to withhold the payments. Section 35, and I worked in child support, I can tell you that Section 35's intent, the legislature's intent was, I'll just use an example. Joe Mechanic works for his boss, Jim, at the garage. Can I stop you for a minute? Sure. I might have misheard what you said. The government has no gain by not withholding? Is that what you mean? I'm sorry if I misspoke. And I might have misheard. I just want to understand your argument. The government has no... Has nothing to gain by not withholding? Is that what you're trying to say? The government has nothing to gain by keeping the money for themselves. Keeping it out of somebody's paycheck and, in the case of businesses, using it to invest in their business. Obviously, the government doesn't have a business. The government has money coming in from taxpayers, and they have too many uses for it already. But in this case, Laura Murray, her title is wage garnishment clerk two, which means there's a wage garnishment clerk one. There's a wage garnishment clerk three. There's a whole department called the wage garnishment department within the comptroller's office in Chicago. Their whole purpose is to withhold money from their employees' checks, from over 20,000 employees' checks. That's all they do, all day long. They get withholding orders from every corner of the county, and outside of the county in this case, and they withhold money. So it's not like the case where there's a garage mechanic and his buddy, and it's more close, and you can infer that there may be some purpose or some intent there. The purpose of statute, of this Section 35 statute, is to deter future actions. The government really, in general, there's no reason to deter this type of activity because they have set up a specific group for the sole purpose of withholding money. So one is fraud. Your mechanic is more likely to be. Your analysis goes to really probably fraud. So, but we're in charge, so we can have negligent government with no remedy, except those other actions you made. So you have negligent employees, and negligence all over a government setting, and there's no recourse. There is tort immunity, and the first section of the tort statute says that a local public entity is not liable for punitive or exemplary damages, as you know. And in this case, the Murray court quoted Paulson and said that punitive damages serve to punish and deter that party and others, and that Section 35 is not remedial, and it presupposes a punitive purpose. So the Murray court took those things into consideration and came forth that no, tort immunity does prohibit this penalty from being waged against the government in this case. The penalty contained in the statute. Yes, Your Honor. Which was that now your opposing counsel says it's not really a punitive penalty. How do you respond to that? I think that's what I heard in the argument. Yes, Your Honor. There are several cases, and we plead them and we cite them. Solomon in particular talks about the punitive nature that there really is. I'm sorry, Murray talks about the fact that it is punitive in nature. So I would argue that it is. There's no way to interpret it as not punitive. Its purpose is to deter future actions in a punitive way. Thank you. There are other arguments that you can distinguish is that this really isn't within that. Because we're not talking about an official, we're talking about a ministerial act. No, Your Honor, and I see that in Plaintiff's pleadings, the plaintiff uses two different parts of the Tort Immunity Act. Our defense has nothing to do with the fact that it's a ministerial. The very first provision of tort immunity is local public entities. And it just clearly flat out says local public entities are not liable for punitive or exemplary damages. It doesn't, in this case, we're not stating that Laura Murray is a public official acting in any kind of public capacity. So hopefully that is clear from our briefs. It's the entity. It's the entity in this case. Yes. The last thing I would just say is that plaintiff provides an awful lot of arguments which do use some significant language, and I would say harsh language. The plaintiff characterizes Ms. Murray's actions as grossly negligent, unprofessional, indifferent, conscious disregard for the plaintiff's property. That language is harsh, and it does... It's lifted from case law, I'm sure. It's language of the courts. It is, Your Honor. Unfortunately, it's not lifted from Statute 35, Section 35 case law. But it's from our courts. It doesn't apply to this case, to the Solomon case, Thomas v. Diener, Vaughn, Dunahee. None of those cases use that language. In this case, it's just a simple mistake. It's an unfortunate mistake. There were several payments that were missed. But it's clear from the actions of Laura Murray that the minute she got the... in this case, she saw that it was amended, and she turned back on, essentially, the spousal support order. So it was... It's not an inexplicable mistake either when you read the letter that counsel sent to the withholding... what do you call the department, the withholding department? Yes. Because it was omitted that the maintenance award continues. It was, and it's unfortunately... And you kind of wonder why that was omitted, because an attorney notifying the department, you know, please stop child support, it seems like it would have been really easy to include, but maintenance continues. So in deference to the clerk that you are so gamutly defending, it is an understandable mistake based on the language of that particular letter. That is the point. It's an unfortunate mistake, but it is understandable. It's reasonable within the confines of the affidavit. Was it an ambiguous letter? It was. It had a subject and a verb, right? There were several documents, a series of documents, and it was not ambiguous. It said cease any current withholdings. But later on, it was the actual active document, and it's unfortunate that she missed that. That document itself stated what? The amended support order, the uniform order of support that was amended clearly stated that child support should be terminated, that spousal support should continue. Unfortunately, it was transmitted in a manner that caused a mistake, essentially. Thank you, Your Honors. I just ask that you affirm the circuit court's findings. Thank you both for your arguments, and the court will take this under advisement on each decision. Thank you. Thank you, guys. Court is adjourned.